# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

                                Case No. 10-20436

v.                                  Honorable David M. Lawson

THEODORE COOPER STEWART,

        Defendant.

_____/

## OPINION AND ORDER DENYING MOTION FOR
## JUDGMENT OF ACQUITTAL OR A NEW TRIAL

The defendant was convicted by a jury in September 2010 of two counts of knowingly transporting child pornography in interstate commerce, 18 U.S.C. § 2252A(a)(1). Before the Court is his timely-filed motion for a judgment of acquittal and for a new trial. While the motion was pending, the defendant sought the withdrawal of his counsel and the appointment of new counsel. The Court granted that request and permitted appointed defense counsel the opportunity to file a supplemental brief in support of the defendant's motion and to raise new issues in that brief.

The defendant advances the following grounds in support of his motion for a judgment of acquittal: (1) the government failed to present sufficient evidence to support his conviction or to demonstrate that he knew the images were lascivious, and (2) the indictment criminalizes conduct that is protected by the First Amendment because no children were harmed. The Court finds no merit in either of those arguments. The government has presented sufficient evidence on each element of the crime and persuasive precedent suggests that the jury reasonably may consider certain manipulations to an image (either in its taking or thereafter) to demonstrate that the images were

lascivious or intended to elicit a sexual response. The Court will deny the motion for judgment of acquittal.

The defendant requests a new trial because (1) the Court improperly joined the two counts in the same trial, (2) the prosecutor committed misconduct by certain comments and demonstrative exhibits presented during closing arguments, (3) the jury instructions failed to define an identifiable minor and allowed the jury to convict the defendant of an offense that did not exist, (4) the Court improperly admitted Exhibits 15 and 16 in violation of the limited context test; (5) the government failed to publish the computer's hash value and performed an unfair investigation; and (6) the Court should have recognized a distinction between an emotional and a sexual response under the law. The Court finds no merit in arguments (1) through (3), (5), and (6). The defendant has failed to present any authority supporting the final two arguments. The defendant failed to object to joinder and the jury instructions prior to trial, and did not object at trial to the prosecutor's alleged misconduct with respect to statements made during closing arguments, and he cannot overcome the plain error standard the Court must apply to those issues. The defendant did object to the prosecutor's use of certain images during closing argument, but Sixth Circuit precedent suggests that the Court's curative instruction was sufficient to overcome any potential prejudice.

Argument (4) presents a closer question. The Sixth Circuit's limited context test allows additional images only of the same victims and explicitly excludes images of other victims. Exhibits 15 and 16 include hundreds of pictures of a variety of children (although none constitutes pornography), and it appears at first glance that their admission violates the limited context test, an error that the Sixth Circuit has described as highly prejudicial even under a plain error standard. However, the defendant stipulated to the admission of those exhibits during trial and has not

explained to the Court which images he believes properly fall without the limited context test. It is impossible for the Court to determine whether the majority of those images involve the same victims as the charged images. Therefore, the Court will deny the motion because the defendant has failed to carry his burden of demonstrating that a new trial is warranted because the exhibits contained primarily images of other child victims. Therefore, the Court will deny the defendant's motion for a new trial.

## I.

The facts are familiar to the parties and will be summarized briefly here. On May 12, 2009, defendant Theodore Cooper Stewart, an American ex-patriot, was traveling from Thailand, where he lived, to the United States and entered the country at the Detroit Metropolitan Airport via a flight from Japan. Customs and Border Patrol officer Marvin Steigerwald approached Stewart at the baggage carousel and found Stewart to be "standoffish and confrontational." He referred Stewart to secondary inspection, where Steigerwald inspected the defendant's two laptop computers (a Sony VAIO and a Twinhead), digital camera, and three memory sticks. He found suspicious images suggestive of child pornography on the Sony computer but was unable to power up the Twinhead and called in Immigration and Customs Enforcement (ICE) Special Agent Andre Young. Young decided to transport the Twinhead to local ICE headquarters in Detroit for forensic examination and detained both computers. The agents returned the digital camera and memory sticks to Stewart and informed him that he was free to go. At ICE headquarters, forensic analysts reported images of suspected child pornography on the Twinhead computer as well.

On January 26, 2009, a complaint was issued against the defendant and he made an initial appearance on August 7, 2009. The grand jury returned an indictment charging two counts of

transportation of child pornography in violation of 18 U.S.C. § 2252A(a)(1) on September 8, 2009. Count I alleged that five images that appeared to have been downloaded from the Internet were child pornography, and count II alleged that eight photographs of children playing on a beach that had been cropped to focus on genitalia also were child pornography. After several continuances and a change in counsel, the defendant filed a motion to suppress evidence on February 5, 2010. The Court heard oral argument on March 18, 2010 and issued an opinion denying the motion to suppress on May 24, 2010. However, the time limit imposed by the Speedy Trial Act had elapsed, and the Court dismissed the case without prejudice on June 14, 2010.

A new complaint was issued the same date and the grand jury returned a new indictment charging the same two counts of child pornography transportation on July 13, 2010. After the Court denied motions *in limine*, the matter proceeded to trial on September 14, 2010. On September 16, 2010, after the government concluded its case in chief, the defendant made an oral motion for judgment of acquittal under Federal Rule of Criminal Procedure 29, arguing that the government failed to present sufficient evidence that the charged images in count II were lascivious or that the images in count I involved minors, the charge of possession of potential young-adult pornography in count I raised First Amendment concerns, and the government failed to demonstrate that the defendant knew the images were lascivious. Trial Tr., vol. II, at 454-60. The Court denied that motion from the bench, finding that the government had presented sufficient evidence from which a jury could find that the defendant committed each element of the charged crime and that the images as cropped could be considered child pornography under the test in *United States v. Brown*, 579 F.3d 672 (6th Cir. 2009). Trial Tr., vol. III, at 493.

After the proofs were concluded, the Court conducted a charge conference after presenting the parties with a draft of jury instructions compiled from submissions by each side. The defendant objected to the definition of sexually explicit conduct, arguing that the Court should have used the definitions in 18 U.S.C. §§ 2256(2)(a) and 2256(8)(a)&(c) rather than section 2256(2)(b). Trial Tr., vol. II, at 481-84. Both parties agreed that the Court should use the language in section 2256(2)(a), and the Court agreed to substitute those definitions into its jury instructions. *Id.* at 483. The defendant raised no other objections to the proposed jury instructions. *Id.* at 484; *see also* Trial Tr., vol. III, at 570 (lodging no objections at the close of the jury instructions).

During closing argument, the defendant objected to a government slideshow that allegedly used images of better quality and resolution than those introduced as exhibits or provided to defense counsel during pretrial discovery. Trial Tr., vol.II, at 468-69; Trial Tr., vol. III, at 520-25. The Court allowed the government to use the images and gave the jury a cautionary instruction to consider only the exhibits as evidence, not the images presented in closing arguments. Jury deliberations began on September 16 and proceeded to September 17. On September 16, 2010, the Court addressed a note from the jury concerning the definition of child pornography and whether all elements of this definition must be satisfied. Trial Tr., vol. III, at 571-73. The Court re-instructed the jury with the definition of child pornography as follows:

> Child pornography is the visual depiction by film, video, computer-generated image and so forth, as mentioned in the instruction, where the production of the visual depiction involves the use of a minor engaged in sexually-explicit conduct, or such visual depiction has been created, adapted or modified to appear that an identifiable minor is engaging in sexually-explicit conduct. Those are the — that's the definition of child pornography.

Trial Tr., vol. III, at 575. The Court went on to clarify that the additional items in the jury instructions were intended to serve as definitions for the elements of child pornography and the jury

was not limited to the factors listed in the instructions when making its determination of lasciviousness, nor was it required to find the existence of all of the listed factors. *Id.* at 575-76. The Court concluded by reminding the jury that the government was required to prove its case beyond a reasonable doubt and the defendant did not have to prove anything. *Id.* at 576.

The instructions and verdict form directed the jury to consider each of the five images charged in count I and the eight images charged in count II, and decide whether each image satisfied the definition of child pornography. On September 17, 2010, the jury returned a verdict of guilty on count I as to images 0099401031.jpg (Exhibit 8) and 0925224924.jpg (Exhibit 9), but not as to images 18_100x136.jpg (Exhibit 10), fox11.jpg (Exhibit 11), or roxy_2.jpg (Exhibit 12), and guilty on count II as to all images: contemplation.jpg (Exhibit 18), P1020704.jpg (Exhibit 20), P1010203.jpg (Exhibit 22), P1010660.jpg (Exhibit 24), P1000667.jpg (Exhibit 27), P1010292.jpg (Exhibit 29), P1010141.jpg (Exhibit 31), P1010210.jpg (Exhibit 34).

On October 1, 2010, the defendant filed a combined renewed motion for judgment of acquittal under Rule 29 and for a new trial under Rule 33. The government filed a responsive brief, but the defendant did not file a reply. Instead, on February 16, 2011, defense counsel filed a motion to withdraw, asserting a potential conflict of interest between the defendant and his attorneys. The defendant himself concurred in the motion. The Court granted this motion following a hearing on February 23, 2011 and a new lawyer was appointed to represent the defendant. Upon new counsel's request, the Court permitted the defendant to file a supplemental brief in support of the pending post-trial motion in order to raise new issues. Supplemental briefs were filed, and the Court heard oral argument at a hearing on June 30, 2011.

## II. Motion for judgment of acquittal

The defendant properly made and preserved his right to challenge the sufficiency of evidence under Rule 29. *See* Fed. R. Crim. P. 29(a), (c)(3).

When addressing a motion for judgment of acquittal under Rule 29(c), the Court must view the evidence in the light most favorable to the prosecution and determine whether there was sufficient evidence offered at trial to convince a rational trier of fact beyond a reasonable doubt that all of the elements of the charged crimes had been established. *United States v. Graham*, 622 F.3d 445, 448 (6th Cir. 2010); *see also Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979). "The relevant question in assessing a challenge to the sufficiency of the evidence is whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. McAuliffe*, 490 F.3d 526, 537 (6th Cir. 2007); *see also Jackson*, 443 U.S. at 318. The evidence need not exclude every theory of innocence. *Jackson*, 443 U.S. at 319. The testimony of a single witness is generally sufficient to demonstrate guilt beyond a reasonable doubt. "The prosecution, however, must present substantial evidence as to each element of the offense from which a jury could find the accused guilty beyond a reasonable doubt." *Brown v. Davis*, 752 F.2d 1142, 1145 (6th Cir. 1985) (internal citation omitted). "Substantial evidence is more than a scintilla. It means such relevant evidence as a reasonable mind might accept to support a conclusion. It is evidence affording a substantial basis of fact from which the fact in issue can be reasonably inferred." *United States v. Martin*, 375 F.2d 956, 957 (6th Cir. 1967). But where the evidence is at least as indicative of innocence as guilt, the Court must direct a verdict of acquittal. *United States v. Berger*, 224 F.3d 107, 116 (2d Cir. 2000).

A. Sufficiency of evidence

The defendant was charged under 18 U.S.C. § 2252A(a)(1), which penalizes "[a]ny person who . . . knowingly . . . transports . . . using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by any means, including by computer, any child pornography." The statute defines "child pornography" as:

> any visual depiction, including any photograph, film, video, picture, or computer or computer-generated image or picture, whether made or produced by electronic, mechanical, or other means, of sexually explicit conduct, where--
> (A) the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct;
> (B) such visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaging in sexually explicit conduct; or
> (C) such visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaging in sexually explicit conduct.

18 U.S.C. § 2256(8). "Sexually explicit conduct" involves "actual or simulated . . . sexual intercourse . . . ; . . . bestiality; . . . masturbation; . . . sadistic or masochistic abuse; or . . . lascivious exhibition of the genitals or pubic area of any person." 18 U.S.C. § 2256(2)(A); *see also* 18 U.S.C. § 2256(2)(B) (providing similar definitions for conduct defined in 18 U.S.C. § 2256(8)(B)).

The government contended that the images on the defendant's computers met only one part of the definition of "sexually explicit conduct": the "lascivious exhibition of the genitals or pubic area" of the children in the photos. The parties' present dispute involves the definition of the term "lascivious" in the requirement of sexually explicit conduct, which remains undefined in the statute.

The Sixth Circuit, along with a majority of circuits, has adopted the test for "lasciviousness" from *United States v. Dost*, 636 F. Supp. 828, 832 (S.D. Cal. 1986). *See United States v. Brown*, 579 F.3d 672, 680 (6th Cir. 2009); *see also United States v. Campbell*, 81 F. App'x 532, 536 (6th Cir. 2003)). The *Dost* test asks the factfinder to evaluate the following six factors:

1) whether the focal point of the visual depiction is on the child's genitalia or pubic area;

2) whether the setting of the visual depiction is sexually suggestive, i.e., in a place or pose generally associated with sexual activity;

3) whether the child is depicted in an unnatural pose, or in inappropriate attire, considering the age of the child;

4) whether the child is fully or partially clothed, or nude;

5) whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity;

6) whether the visual depiction is intended or designed to elicit a sexual response in the viewer.

*Dost*, 636 F. Supp. at 832; *Brown*, 579 F.3d at 680; *see also United States v. Steen*, 634 F.3d 822, 828 (5th Cir. 2011) ("We have previously adopted the ordinary meaning of the phrase 'lascivious exhibition,' which we defined as 'a depiction which displays or brings forth to view in order to attract notice to the genitals or pubic area of children, in order to excite lustfulness or sexual stimulation in the viewer.'" (quoting *United States v. Grimes*, 244 F.3d 375, 381 (5th Cir. 2001), and *United States v. Knox*, 32 F.3d 733, 746 (3d Cir. 1994)). "[T]his list is not exhaustive, and an image need not satisfy every factor to be deemed lascivious." *Campbell*, 81 F. App'x at 536. Other circuits have noted that the factors "are neither comprehensive nor necessarily applicable in every situation" and caution that a court's inquiry must be case-specific. *United States v. Frabizio*, 459 F.3d 80, 87 (1st Cir. 2006).

The images charged in count 2 of the indictment all share the same characteristic: each of the eight images was a cropped version of a larger photograph. The larger images, the government agrees, did not meet the definition of child pornography; they were photographs of young girls swimming naked at a beach. However, the cropped images all focused on the girls' genitalia, and the government contends that the concentration of the photographic image on that sexual organ rendered the images lascivious. Although Exhibit 9, which is one of the images charged in count

1, likely did not originate from a beach photo, it is cropped in the same fashion to focus in a young girl's vulva; and the government contends that image is lascivious for the same reason.

Both parties agree that the *Dost* test applies to the issue before the Court and argue only as to the interpretation and application of the factors to the images presented to the jury in this case, particularly with respect to the sixth factor — "whether the visual depiction is intended or designed to elicit a sexual response in the viewer." The articulation of that factor, especially the choice of the words "intended or designed," has provoked a debate over whether the determination of lasciviousness must be confined to the four corners of the image, or if consideration of the context from which the photograph arose is allowable to assess the creator's intent or design. In *United States v. Brown*, the Sixth Circuit weighed the competing arguments and adopted a "limited context test" that "permits consideration of the context in which the images were taken, but limits the consideration of contextual evidence to the circumstances directly related to the taking of the images." *Brown*, 579 F.3d at 683. The court explained how that test might be applied:

> A number of factors can illuminate the context in which photographs were taken. These include, *inter alia*, evidence about (1) where, when, and under what circumstances the photographs were taken, (2) the presence of other images of the same victim(s) taken at or around the same time, and (3) any statements a defendant made about the images. Consideration of these factors can help factfinders consider the way a defendant "arranged the poses and took the photographs" . . . and can help them resolve close judgment calls about whether an image inadvertently focuses on a child's genitalia, or whether it is intended to elicit a sexual response in the viewer.

*Id.* at 683-84 (internal citation and footnote omitted). The court was careful to caution against consideration of other factors, however, "that do not relate directly to the taking of the images, such as past bad acts of the defendant, the defendant's possession of other pornography (pornography of another type or of other victims), and other generalized facts that would relate only to the general 'unseemliness' of the defendant." *Id.* at 684.

The defendant does not contest the fact that Exhibit 8, which depicts a young girl's vulva next to an adult penis, constitutes child pornography. However, he argues that the act of cropping the photographs cannot render lascivious an image that was not initially so. Therefore, he contends that he is entitled to a judgment of acquittal on Exhibits 9, 18, 20, 22, 24, 27, 29, 31, and 34. He also argues that there was no evidence from which the jury could find that he knew those images were pornographic.

The defendant bears a "heavy burden" of demonstrating that the evidence failed to provide grounds on which a reasonable jury could have concluded that the condemned images met the definition of child pornography. *United States v. Abboud*, 438 F.3d 554, 589 (6th Cir. 2006). As to Exhibit 9 in count 1 (the close cropped image merely depicting a vulva), the government presented evidence that the image could be considered lascivious because it involved a minor (based on the testimony of forensic pathologist Dr. Kanu Virani), focused on the child's genitalia, and the area photographed was nude. The jury properly could infer that the image was intended to elicit a sexual response in the viewer because of how it was cropped and where it was located on the defendant's computer.

The government presented evidence that the images in count 2 involved minors (a fact that appears to be undisputed by the defendant), the focal point of the images was the child's genitalia, the children were partially clothed or nude, and photographs were cropped from larger images that largely were innocuous. The jury could have inferred that the act of cropping demonstrated that the images were intended to elicit a sexual response in the viewer and constituted a lascivious exhibition of the genitals, despite the defendant's argument to the contrary. The government offered evidence that the larger images were taken with a camera that had the same characteristics as the camera

-11-

possessed by the defendant and edited using the same software found on the computers seized from the defendant at the border. The defendant contends that the act of cropping cannot as a matter of law render an image lascivious when the larger image from which it was cropped was undisputably not lascivious. However, several courts, including the Sixth Circuit in *United States v. Brown*, have suggested that a reasonable jury may consider evidence of cropping or a focus on a specific area to support a finding of lasciviousness. *See Brown*, 579 F.3d at 681; *see also United States v. Johnson*, 639 F.3d 433, 440-41 (8th Cir. 2011) (holding that "a reasonable jury could find the video clips were intended to be lascivious" because the video camera involved in the production of the images was angled and zoomed such that "the frame encompassed their nude bodies from their shoulders to below their knees."); *United States v. Freeman*, 808 F.2d 1290, 1292 (8th Cir. 1987) (noting that the statute provided sufficient notice to the defendants that their conduct of zooming their camera to focus on the girl's genitalia was illegal under the statute); *United States v. Dauray*, 76 F. Supp. 2d 191, 196-97 (D. Conn. 1999) (cropped images alone may be sufficient to support a finding of lasciviousness), *reversed on other grounds*, 215 F.3d. 251 (2d Cir. 2000).

Similarly, the evidence supporting the inference that the images were cropped by the defendant is sufficient to establish the knowledge element of the offense. *See Freeman*, 808 F.2d at 1292 (noting that the statute provided sufficient notice to the defendants that their conduct of zooming their camera to focus on the girl's genitalia was illegal under the statute).

The Court is satisfied that the record contains sufficient evidence from which the jury could have found all the elements of the crime charged beyond a reasonable doubt as to both counts of the indictment.

## B. First Amendment bar

The defendant also argues that his conviction should be reversed on First Amendment grounds because it is unconstitutional to criminalize the manipulation of photographs where no child abuse or exploitation occurred. The defendant describes his modifications as expressive conduct that should be protected by the First Amendment. He relies on *State v. Zidel*, 156 N.H. 684, 940 A.2d 255 (2008), where the New Hampshire Supreme Court held that the defendant could not be convicted under a child pornography statute based on images he created by morphing an identifiable child's face onto an adult's body and which he kept in his possession alone.

In *New York v. Ferber*, 458 U.S. 747 (1982), the Supreme Court held that "[w]hen a definable class of material . . . bears so heavily and pervasively on the welfare of children engaged in its production, we think . . . that it is permissible to consider these materials as without the protection of the First Amendment" based on the state's special province for protecting minors and the "intrinsic[] relat[ion]" between the production of child pornography and the sexual abuse of children. *Id.* at 759, 764; *see also Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 240, 250 (2002); *United States v. Amirault*, 173 F.3d 28, 34 n.3 (1st Cir. 1999). The Supreme Court also upheld a ban on the possession of pornography produced using children in *Osborne v. Ohio*, 495 U.S. 103 (1990), based on "the State's interest in protecting the victims of child pornography." *Id.* at 110; *see also Free Speech Coalition*, 535 U.S. at 250.

In *Free Speech Coalition*, the Supreme Court turned to the constitutionality of the Child Pornography Prevention Act of 1996, 18 U.S.C. § 2251 *et seq.*, the statute under which the defendant is convicted in this case. *Free Speech Coalition*, 535 U.S. at 243-44. The issue before the Supreme Court was slightly different that in the present case, however, because it involved the production of material that "appears to be" child pornography under 18 U.S.C. § 2256(8)(B). *Id.*

at 241. The Court focused on pornography involving "virtual minors," that is, images made on a computer to appear like child pornography but that do not necessarily involve the use of an actual child victim. The Court expressed grave concerns over the scope of speech prohibited by the law and the lack of a connection established in the statute between the speech (or the production and distribution of child pornography) and sexual abuse of children. *Id.* at 247-50. Ultimately, the Supreme Court concluded that the prohibition in section 2256(8)(B) could not be justified under the Court's precedents and was overbroad and unconstitutional. *Id.* at 256. The Court also sustained a similar challenge to section 2256(8)(D), which prohibited material that "convey[ed] the impression" that it depicted minors, as overbroad and unconstitutional. *Id.* at 258.

Under a revised version of the statute, the Supreme Court held in *United States v. Williams* 553 U.S. 285, 299 (2008), that "offers to provide or requests to obtain child pornography are categorically excluded from the First Amendment." *Id.* at 299. The Court again noted that "[c]hild pornography harms and debases the most defenseless of our citizens." *Id.* at 307. It also asserted that Congress's "carefully crafted" response to the Court's decision in *Free Speech Coalition* was "successful." *Ibid.*

In *Doe v. Boland*, 630 F.3d 491 (6th Cir. 2011), the Sixth Circuit applied those precedents to a circumstance that approaches the factual circumstances of the present case. There, the defendant challenged his conviction for morphed child pornography images under section 2256(8)(C). The court noted that the situation was dissimilar from one involving an image morphed from two innocent images or an image of an adult morphed into an image of a child engaging in sexual activity; instead, the defendant "morphed images of *minors* into pornography, images that 'implicate the interests of real children.'" *Id.* at 497 (quoting *Free Speech Coalition*, 535 U.S. at

242).  The court determined that the defendant's morphed images were directly covered by section 2256(8)(C) and "the reality that Boland himself did not 'use' real children to produce the images makes no difference" under section 2252A.  *Ibid.*

*Boland* suggests that children are harmed whenever they actually appear in lascivious photographs, even if they were not posed and even when the lasciviousness results from image manipulation.  The Court, therefore, must reject the defendant's argument on First Amendment grounds.  The Supreme Court has made clear that once an image is determined to constitute child pornography, no protection can be derived from the First Amendment.  The Sixth Circuit has upheld the criminalization of graphic manipulation of a photograph by a defendant even where a child was not used to create the original images and where there is no explicit evidence of harm to the photographed child.  The statute explicitly criminalizes the transportation of child pornography, and there is evidence in the record from which the jury could have concluded that the images showed a lascivious display of the children's genitals.  Although many of the cases have focused on the exploitation of the child in the production process, there is also harm to the child in his or her objectification by a single viewer and in the transportation of his or her images of unintended intimacy in commerce.  On these bases, a child may still be exploited even without knowingly participating in the taking of the photograph.

The Court finds that the First Amendment presents no bar to the defendant's convictions in this case.

### III.  Motion for new trial

"Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires."  Fed. R. Crim. P. 33(a).  "The decision whether to grant a new

trial is left to the sound discretion of the district court." *United States v. Pierce*, 62 F.3d 818, 823 (6th Cir. 1995). "A reversal based on the verdict being against the manifest weight of the evidence is proper when the government has presented sufficient evidence to convict, but the judge disagrees with the jury's resolution of conflicting evidence." *United States v. Lutz*, 154 F.3d 581, 589 (6th Cir. 1998). "A district judge, in considering the weight of the evidence for purposes of adjudicating a motion for new trial, may act as a thirteenth juror, assessing the credibility of witnesses and the weight of the evidence." *United States v. Hughes*, 505 F.3d 578, 593 (6th Cir. 2007) (quoting *Lutz*, 154 F.3d at 589). Moreover, "it is widely agreed that Rule 33's 'interest of justice' standard allows the grant of a new trial where substantial legal error has occurred." *United States v. Munoz*, 605 F.3d 359, 373 (6th Cir. 2010) (citing cases).

## A. Improper joinder

Among the several grounds on which the defendant's motion for new trial is based is the contention that the Court improperly joined the two counts in the same trial. Federal Rule of Criminal Procedure 12 states that motions to sever charges under Rule 14 "must be raised before trial." Fed. R. Civ. P. 12(b)(3)(D); *United States v. Wallace*, 597 F.3d 794, 798 (6th Cir. 2010). Objections and motions properly brought under Rule 12(b)(3) are waived if not made in the allotted time prior to trial. Fed. R. Civ. P. 12(e); *Wallace*, 597 F.3d at 798; *United States v. Deitz*, 577 F.3d 672, 692 (6th Cir. 2009) ("Thus, because the record reveals that Deitz failed to file a Rule 14(a) motion prior to trial, he waived his objection."); *see also United States v. Rox*, 692 F.2d 453, 454 (6th Cir. 1982) (determining that the defendant waived her objection to misjoinder when she failed to raise the issue until the third day of trial and could not challenge the allegedly improper joinder on appeal). A court may grant relief from the waiver "[f]or good cause," Fed. R. Civ. P. 12(e);

*Wallace*, 597 F.3d at 798, where the defendant can "articulat[e] some compelling reason for not filing the motion within the deadline," *United States v. Walden*, 625 F.3d 961, 966 (6th Cir. 2010); *see also Wallace*, 597 F.3d at 798-99 (holding that "the verdict must stand because Defendant waived her right . . .[,] has suffered no constitutional harm as a result of all charges being tried together in a single trial," and failed to make "'any substantive objections' to the allegedly improper joinder." (quoting *Abboud*, 438 F.3d at 567)).

The defendant did not file a motion to sever before trial. Therefore, the defendant has waived this objection under Federal Rule of Criminal Procedure 12(b)(3). The defendant has presented no arguments tending to demonstrate good cause for failing to file a motion within the deadline and instead argues only prejudice. The defendant has failed to meet the standards applicable under Federal Rule of Civil Procedure 12(e) for the Court to grant relief from his waiver. The Court will deny the defendant's motion for a new trial on this ground.

### B. Prosecutorial misconduct

The defendant points to three incidents during trial as constituting misconduct by the prosecutor: (1) stating during closing argument that the defendant was responsible for cropping the images; (2) referring to him as a "bad guy" during the direct examination of ICE agent Joshua Edwards; and (3) using images of exhibits during closing that were enhanced in size and had resolution greater than the images actually received in evidence.

The first item was not preserved by objection. In the absence of an objection, the Court applies a plain error analysis. Fed. R. Crim. P. 52(b); *United States v. Warshak*, 631 F.3d 266, 304 n.42 (6th Cir. 2010) (citing *Cristini v. McKee*, 526 F.3d 888, 901 (6th Cir. 2008)). Under the plain error standard, the defendant must demonstrate (1) error, (2) that was plain, (3) that affects

substantial rights, and that (4) "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *Puckett v. United States*, 556 U.S. 129, 135 (2009) (quoting *United States v. Olano*, 507 U.S. 725, 736 (1993)) (alterations in original). "A 'plain error' is one that is clear or obvious," either at the time of trial or while pending appeal. *United States v. Oliver*, 397 F.3d 369, 379 (6th Cir. 2005) (citing *Olano*, 507 U.S. at 734). For an error to affect a defendant's substantial rights under the third element of the test, the defendant "must generally show that the error was prejudicial, that is, that it affected the outcome of the district court proceedings." *United States v. Smith*, 601 F.3d 530, 541 (6th Cir. 2010) (citing *United States v. Jones*, 108 F.3d 668, 672 (6th Cir. 1997)).

The defendant does not clear the starting gate on the first item. The argument attributing the cropping activity to the defendant was not misconduct and not error. Attorneys are permitted to draw reasonable inferences during closing argument that are based on the evidence presented at trial. *Cristini*, 526 F.3d at 901; *see also United States v. Crosgrove*, 637 F.3d 646, 663-64 (6th Cir. 2011); *Byrd v. Collins*, 209 F.3d 486, 535 (6th Cir. 2000). The government presented evidence that each image was taken with the same camera as was found on the defendant at the border, was edited with the same software as was on the computers collected from the defendant at the border, and was stored on the computers found on the defendant at the border. It is worth noting in passing that the defendant did not present any evidence contesting ownership of the camera, the image editing software, or the computers, and did not argue that any other individuals had used the camera or the software to take or crop the images at issue. It was not an error for the prosecutor to argue the inference that the defendant had taken and cropped the images. *See, e.g.*, *Byrd*, 209 F.3d at 535

(holding that the prosecutor's inference that the shirt sleeve was bloody and involved in the crime because it was missing was not an error).

The defendant did object to the prosecutor's use of the term "bad guy" during agent Edwards's examination. In response, the Court sustained the objection and told the government to rephrase the question. If the statement was improper, which it arguably was, then the Court must evaluate the four flagrancy factors generally used by the Sixth Circuit: "(1) the likelihood that the remarks of the prosecutor tended to mislead the jury or prejudice the defendant; (2) whether the remarks were isolated or extensive; (3) whether the remarks were deliberately or accidentally made; and (4) the total strength of the evidence against the defendant." *United States v. Ham*, 628 F.3d 801, 810 (6th Cir. 2011) (quoting *United States v. Davis*, 514 F.3d 596, 613 (6th Cir. 2008)).

To the extent that this statement may be construed to refer to the defendant (which is not altogether clear), it certainly is improper — as noted by the Court on the record — and also presents an expression of personal opinion that the Sixth Circuit has found to be prejudicial under the first flagrancy factor. *See United States v. Dandy*, 998 F.2d 1344, 1353 (6th Cir. 1993); *United States v. Bess*, 593 F.2d 749, 755 (6th Cir. 1979). However, the Court asked the government to rephrase its question and it did so, which lessens prejudice to the defendant. *Cf. Warshak*, 631 F.3d at 306 (discussing ameliorative instructions). Therefore, the first factor cuts in favor of the defendant, but not substantially. The second factor weighs in favor of the government. The "bad guy" reference was a single statement made in isolation. The record reflects that this statement was made by accident, which the Court itself suggested, and the government apologized for this slip. In fact, the context of the question indicated that the prosecutor intended to refer to a hypothetical "bad guy," and not the defendant *per se*. The fourth factor is a wash. As noted above, the government

presented sufficient evidence to support the jury's conviction; however, the Court noted in its ruling on the Rule 29 motion that the issue was a close factual one for the jury: the evidence that the defendant possessed the images was overwhelming, but the question whether cropping may render an image lascivious has not been ruled on by a court as a matter of law. The Court is satisfied that the prosecutor's isolated statement, unfortunate as it was, did not constitute prosecutorial misconduct.

The defendant also objected several times to the use of larger and higher resolution images of the accused photographs as demonstrative evidence during closing argument. The government insists that it did nothing to enhance the images, and the larger size was simply a function of using the video screen in the courtroom instead of letter-size paper to reproduce the images. The defendant has offered nothing to contradict that assertion.

But even if the government did alter the images, the Sixth Circuit has held that "the trial court can generally correct such improprieties by instructing the jury that closing arguments are not evidence." *Crosgrove*, 637 F.3d at 664 (citing *United States v. Emuegbunam*, 268 F.3d 377, 406 (6th Cir. 2001)); *see also Warshak*, 631 F.3d at 306. In this case, the Court addressed the defendant's objection with the following instruction:

> Members of the jury, you have seen a display of a couple of images on the screen during the Government's closing argument here. It has been brought to my attention that the appearance of those images appear — looks clearer and more defined and the resolution is better than the actual exhibits that were received in the case. That may be true. That's up to you to decide.
> However, you must decide the case based on the evidence. The evidence of the images themselves will be the pictures that were marked and received by me in court. And when you return to the jury room, we will have a notebook with those exhibits in them and those are the ones that you must consider in determining whether the images themselves, whether the pictures themselves, constitute child pornography as I have defined it for you.

> I will permit the parties, particularly the Government, to use those images that have been prepared for the demonstrative purposes; however, those are not the evidence in the case. The evidence in the case that you must consider are the photographs that are marked as exhibits and that you will have in the jury room.

Trial Tr., vol. III, at 524-25. This instruction is in line with — and in fact, more extensive than — instructions that have been found to "cure" any potential impropriety in prior cases. *See Crosgrove*, 637 F.3d at 664; *Warshak*, 631 F.3d at 306. The jury is presumed to follow such instructions. *Ham*, 628 F.3d at 811 (citing *United States v. Moreno*, 933 F.2d 362, 368 (6th Cir. 1991)). In addition, the likelihood of prejudice is diminished by the fact that the allegedly improper images were shown for only a couple seconds, at most ten, during closing argument, and the images that the jury considered throughout their deliberations were the copies of the "lower resolution" photographs that had been admitted as evidence. The defendant is not entitled to a new trial on this ground.

## C. Jury instructions

The defendant argues that the jury instructions were erroneous and misleading because the Court did not inform the jury of the statutory definition of an "identifiable minor" as set out in 18 U.S.C. § 2256(9). The precise nature of the criticism is not clear, but it appears that the defendant is asserting that without that definition, the jury could have convicted the defendant even if it found that the images were not created, adapted, or modified using images of real minors and instead using images of virtual humans. The defendant also appears to argue that the instructions allowed the jury to convict even if the real humans in the photographs were over 18 years old.

Federal Rule of Criminal Procedure 30(d) requires that "[a]party who objects to any portion of the instructions or to a failure to give a requested instruction must inform the court of the specific objection and the grounds for the objection before the jury retires to deliberate." The defendant neither requested an instruction along the lines of section 2256(9) nor objected to the absence of

such an instruction. "Failure to object in accordance with this rule precludes appellate review, except as permitted under Rule 52(b)[, the plain error rule]." *Ibid.* When the defendant fails to object to the jury instructions, "plain error requires a finding that, taken as a whole, the jury instructions were so clearly erroneous as to likely produce a grave miscarriage of justice." *United States v. Morrison*, 594 F.3d 543, 546 (6th Cir. 2010) (quoting *United States v. Newsom*, 452 F.3d 593, 605 (6th Cir. 2006)).

The Court agrees that it would have been preferable to instruct the jury on the definition set out in section 2256(9). That statute states:

> (9) "identifiable minor"--
> (A) means a person--
> > (i)(I) who was a minor at the time the visual depiction was created, adapted, or modified; or
> > (II) whose image as a minor was used in creating, adapting, or modifying the visual depiction; and
> > (ii) who is recognizable as an actual person by the person's face, likeness, or other distinguishing characteristic, such as a unique birthmark or other recognizable feature . . .

18 U.S.C. § 2256(9). And certainly, had either party requested the instruction, the Court would have given it.

But the question of "virtual images" was never in play in this case. As the government points out, neither party presented any evidence concerning computer-generated images involving avatars or other simulations. The Court's jury instruction defining a minor as "a person younger than 18 years old," Trial Tr., vol III, at 508, is merely a clearer way of stating that the image must be of a real person who was a minor at the time of the image's creation or whose image as a minor was used in creating the visual depiction. The omission of the statutory language of section 2256(9) did not result in a miscarriage of justice, grave or otherwise.

If the defendant instead is arguing that the instructions allowed the jury to convict on the cropped images, even though several of them did not include a face, likeness, or other identifying characteristic of the child in the photograph, the argument is not supported by precedent. As noted earlier, several courts have upheld convictions for cropped images that did not include faces without suggesting that the images did not meet the statutory definition for an identifiable minor. *Johnson*, 639 F.3d at 440-41; *Brown*, 579 F.3d at 681; *Freeman*, 808 F.2d at 1292; *Dauray*, 76 F. Supp. 2d at 197. There was evidence in the case from which the jury could "identify" the minors whose images were cropped: the jury properly could consider the images from which the cropped pictures were taken, *Brown*, 579 F.3d at 684, and those images provided sufficient information from which the jury could find that an identifiable minor was involved in the production of the accused photographs.

The defendant points out that the jury submitted a question asking about the definition of child pornography. The Court interpreted the jury's question to ask which elements the jury was required to find and not what constituted a minor within the image. After the Court responded to the jury, the Court asked counsel if they had any objections to the explanation and both parties indicated that they did not. Trial Tr., vol. III, at 578. There is no basis on which to conclude that the jurors were confused as to the requirement that a real minor must be the subject of the accused image.

A new trial is not warranted on this ground.

### D. Admission of Exhibits 15 and 16

On the second day of trial, the government moved for the admission of exhibits 14 through 34A. Trial Tr., vol II, at 387-88. Defense counsel stated that he had no objection and the Court

admitted the entire range of exhibits. Among them were Exhibits 15 and 16, which were collections of photographs retrieved from the defendant's computers that did not amount to child pornography, but were characterized by the government as "child erotica." The defendant now argues that the Court should not have received those collections because they exceeded the scope of the limited context test announced by the Sixth Circuit in *United States v. Brown*. As noted earlier, in *Brown*, the court permitted the consideration of images (other than the accused images) "of the same victim(s) taken at or around the same time" to evaluate "the circumstances directly related to the taking of the images." 579 F.3d at 683-84. However, "the defendant's possession of other pornography (pornography of another type or of other victims), and other generalized facts that would relate only to the general 'unseemliness' of the defendant" is not admissible. *Id.* at 684.

Exhibits 15 and 16 contain hundreds of images of different children playing on the beach in different stages of disrobing. In most cases, the children are photographed from the back or their faces are otherwise obscured by the scenery or their positions (indeed, several of the larger images connected to the charged images do not present sufficient personal characteristics to identify one child victim from another). It is difficult to tell whether any of the images in these exhibits include the same victims in the charged images; it is likely that there is some overlap. However, it is safe to say that the majority of the images depict children not presented in the accused images.

It is somewhat of a stretch to say that the admission of images of other children as found in Exhibits 15 and 16 was erroneous under *Brown*. Certainly, an objection at trial on the basis of *Brown* would have had to have been considered seriously, and possibly it would have been sustained. However, *Brown*'s caution was directed toward "*pornographic images* of other children" that could amount to "a separate criminal act." *Id.* at 686 (emphasis added). The danger of allowing

"unrelated" child pornography into evidence, the court explained, was that the factfinder could "find an otherwise innocuous photograph lascivious, and . . . convict[] a defendant for conduct unrelated to the charges at hand." *Id.* at 686.

Admission of the exhibits did not amount to plain error. The Sixth Circuit has stated that the test "encourages litigants to decide what issues really matter and to raise them while the district court still has time to take action, rather than 'sandbagging' and remaining silent pending the outcome of the case." *United States v. Williams*, 641 F.3d 758, 770-71 (6th Cir. 2011) (Thapar, J., concurring). Even if the defendant could satisfy the first three elements of the plain error test, the Court cannot find that "the error seriously affect[ed] the fairness, integrity or public reputation of the judicial proceedings." *Puckett*, 556 U.S. at 135. The Supreme Court has observed that "[i]n cases applying this fourth criterion, we have suggested that, in most circumstances, an error that does not affect the jury's verdict does not significantly impugn the 'fairness,' 'integrity,' or 'public reputation' of the judicial process." *United States v. Marcus*, --- U.S ---, 130 S. Ct. 2159, 2166 (2010).

The main issue in this case, except with respect to Exhibit 8, which the defendant acknowledged was child pornography, was whether the act of cropping itself rendered the images lascivious. Neither party argued that the initial images — or any similar images of other victims, including those in Exhibits 15 and 16 — were lascivious. The Court cannot say that admission of those exhibits affected the jury's verdict in this case. The defendant is not entitled to a new trial on this ground.

E. Unfair investigation

The defendant argues that the government did not engage in a fair investigation, reorganized and planted evidence on his computer to make him appear more guilty, and failed to publish the hash value of the computer until after it completed its investigation in order to perform an unfair investigation. The hash value is the result of a calculation — a hash algorithm — that can be performed on a string of text, an electronic file or an entire hard drive's contents. The likelihood of two data collections having the same hash value is extremely remote, so hash values can be used to verify that a forensic image or clone was captured successfully. *Cf. United States v. Richardson*, 607 F.3d 357, 362-63 (4th Cir. 2010). The virtue of publishing a hash value in a public place before the computers' hard drives were analyzed would be to provide a means to ensure that no tampering occurred. But the defendant's argument puts the cart before the horse.

There is no precedent that suggests that the government must take prophylactic measures to guard against an accusation of evidence tampering. And there is no suggestion in this case beyond the defendant's wild speculation that the government did anything to alter the contents of the hard drives. The defendant's argument to the contrary is frivolous; he certainly is not entitled to a new trial on this ground.

### F. Distinction between an emotional and a sexual response

Finally, the defendant asks the Court to recognize a distinction between an emotional and a sexual response to images of naked children's genitalia, only the latter of which, he argues, may support a finding of child pornography. The defendant argues that the government failed to submit evidence to support a finding that the images were intended to elicit a sexual, rather than an emotional, response.

The defendant again has not presented any legal authority supporting a distinction between those two types of responses, except for his own opinion. The statute under which the defendant was convicted does not focus on the viewer's response to an image, *see* 18 U.S.C. § 2252A(a)(1) (penalizing conduct); 18 U.S.C. § 2256(8) (defining "child pornography"); 18 U.S.C. § 2256(2)(A) (defining "sexually explicit conduct"). Instead, the language involving an intent to elicit a sexual response comes from the judicial test for determining whether an image is lascivious established in *United States v. Dost*, 636 F. Supp. 828, 832 (S.D. Cal. 1986). No courts have discussed a distinction between sexual and emotional responses when applying that element of the test, and the Court has found no support in the law for such a distinction. The defendant has not carried his burden of demonstrating that a new trial on this issue is warranted on this ground.

## IV. Conclusion

The Court finds that the record contains evidence from which the jury could find beyond a reasonable doubt that all the elements of the crime defined by 18 U.S.C. § 2252A(a)(1) were satisfied. The Court also finds that the verdict was not against the manifest weight of the evidence, nor has a substantial legal error occurred.

Accordingly, it is **ORDERED** that the defendant's renewed motion for judgment of acquittal or a new trial [dkt. #29] is **DENIED**.

It is further ordered that counsel and the parties shall appear for sentencing on **March 29, 2012 at 10:00 a.m.**

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated: March 12, 2012

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on March 12, 2012.

s/Deborah R. Tofil
DEBORAH R. TOFIL